UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DR. OTHELIA PRYOR

    Plaintiff,

v

UNIVERSITY OF MICHIGAN
And KRISTEN HOWARD

    Defendants.
_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Dr. Othelia Pryor, makes her complaint of employment discrimination on the basis of age, disability, and FMLA, as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Dr. Othelia Pryor is a resident of Washtenaw County in the Eastern District of Michigan. She was born in 1949.

2. Defendant University of Michigan ["UM"] is a State of Michigan public university located in Ann Arbor, Washtenaw County, Michigan.

3. Defendant Kristen Howard is the Senior Director of the Office for Health Equity and Inclusion for Michigan Medicine, which is UM's Medical Center. At all times relevant, Dr. Pryor was an employee of OHEI under the supervision of Defendant Howard.

1

4. The court's jurisdiction is pursuant to Title VII [of the Civil Rights Act of 1964, 42 USC 2000e], the ADA [Title I of the Americans with Disabilities Act, 42 USC §12101 *et seq.*], Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 701 *et seq.*], Michigan's Elliott-Larsen Civil Rights Act [ELCRA, MCL §37.2101 *et seq.*], the PWDCRA [Michigan's Persons with Disability Civil Rights Act, MCL §37.1101, *et seq.*], and the Family Medical Leave Act [FMLA, 29 U.S.C. § 2601 *et seq.*]. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

5. Dr. Pryor made a timely complaint to the EEOC [Equal Employment Opportunity Commission] on or about December 9, 2022.

6. She received a "right to sue letter" from the EEOC dated October 25, 2023, and timely files this lawsuit within the 90-day right to sue period.

7. Venue is proper in the Eastern District of Michigan as all parties are located within of the Eastern District of Michigan, and the events described in this lawsuit took place primarily in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

8. Dr. Othelia Pryor received her doctorate in Quantitative Methods from Michigan State University and a Masters in Public Health from the University of North Carolina.

9. Dr. Pryor has focused her research and work on health equity topics and addressing health disparities in underrepresented communities.

10. Among other accolades in her long and impressive career, Michigan's legislative Black Caucus has awarded Dr. Pryor two State of Michigan Seals for her long-standing commitment and innovative work in these areas.

11. Before being hired at UM, for over a decade, Dr. Pryor was the founder and CEO of "Without A Vision, LC" which provided educational health programs and consulting to physicians, medical professionals, community residents, and students in K-12 and higher education.

12. Dr. Pryor actually provided these services, as a contractor, to UM in 2016, providing five educational sessions to UM's Office for Health Equity and Inclusion ("OHEI").

13. Shortly thereafter, she applied for a permanent position within that department, and was hired as a Project Senior Manager for UM's OHEI, starting her role in August, 2017.

14. For the first several years – until Defendant Howard assumed a supervisory role – Dr. Pryor's performance was uniformly well evaluated.

15. Her evaluation for both the 2017-2018 and 2018-2019 periods, from her supervisor Phyllis Blackman, earned her the two highest ratings, "exemplary" and "solid performance," in every category.

16. In 2019-2020, the evaluation instrument changed to a "yes/no" in all categories. Dr. Pryor received a "yes" in every category and multiple positive comments from her evaluator, Yvette Stockard.

17. For the 2020-2021 period, Dr. Pryor's performance was chiefly evaluated by Ms. Stockard, who passed away in February, 2021. Dr. Pryor earned all "4" and "5" scores (the two highest) and she received multiple positive comments from Ms. Stockard.

18. Defendant Howard began in May, 2021, and assumed a supervisory role over Dr. Pryor.

19. Thereafter, Defendant Howard engaged in highly negative and critical behavior over Dr. Pryor. In her evaluation, she graded her contrary to all prior evaluations, marking her as "not meeting expectations" along with highly negative commentary.

20. For example, upon first meeting Dr. Pryor, Defendant Howard asked her what her work entailed. After Dr. Pryor described it, Howard retorted, "That doesn't sound like much of a job to me. That only sounds like a fourth of a job."

21. Defendant Howard was impatient with Dr. Pryor and often would not reveal her expectations. For example, she told Dr. Pryor she wanted "excellence" and when asked to elaborate, Howard responded that with her years of experience, Dr. Pryor should know what excellence is.

22. In contrast to the abrupt and impatient way she treated Dr. Pryor, Howard was patient and solicitous of younger and newer employees, and showed that she wanted to work with them and help them.

23. Howard referred critically to Dr. Pryor's "senior" status on the team and expectation that she would look forward and not get "stuck in the rear view."

24. Howard even went so far as to accuse Dr. Pryor of violating federal law regarding the hiring of persons with disabilities, where Dr. Pryor had actually spoken in support of such persons, but simply pointed out that the application deadline for a certain position had already passed.

25. Howard often told Dr. Pryor, as a put-down, that she was an attorney and "knew what she was doing." (Howard is a licensed attorney.)

**Dr. Pryor Applied for Disability Leave**

26. On July 28, 2022, Dr. Pryor's physician supported Dr. Pryor's disability leave request with documentation to the University's office of Work Connections (the University's clearinghouse for disability related requests).

27. Dr. Pryor's department was notified on August 1, 2022 of the request, which was approved on August 3, 2022, to be effective August 8, 2022.

28. At the same time, Dr. Pryor's department was notified, specifically including Defendant Howard.

29. The very next day, Thursday, August 4, 2022, Defendant Howard sent out an updated organizational chart to the entire office that showed Dr. Pryor's position as program manager being vacant, with no name in the box.

30. At the same time, Defendant sent an email announcing to the office that Dr. Pryor was going on indefinite leave commencing August 8, 2022.

31. On that same day, August 4, 2022, Defendant Howard also sent Dr. Pryor an email notifying her of an in person meeting to be held at 3 PM on August 5, 2022, with her and Howard's supervisor, Dr. David Brown, the Vice President of her department. Howard asked Dr. Pryor if she had any personal possessions in her office (Dr. Pryor was still working remotely at that time).

32. Later that evening, Dr. Pryor saw the email notifying her of the meeting the next day. She emailed Howard to say that she would be not be coming in as she left sick the balance of the day August 4, and for Friday, August 5, 2022.

33. On August 5, 2022, Dr. Pryor received a call from Defendant Howard asking if she would be available for a 10 minute call. Dr. Pryor replied that she would call if she felt well enough call, but she ultimately did not.

34. On Sunday, August 7, 2022, Defendant Howard sent Dr. Pryor an email informing her that her position was being eliminated due to an alleged "reduction in force." The email stated:

6

As you know, you were unavailable to speak with Dr. Brown and I last week due to unplanned leave. As I shared during a brief conversation, it was our preference to discuss the attached correspondence with you prior to transmission. We are now sharing this correspondence with you and are available to answer any questions you may have during this time of transition.  The OHEI HR Business Partner, Renee Ermi, who may also be able to answer any questions you may have, is copied as well.

This correspondence will also be delivered via certified mail to the home address on file.

35. The letter attached to the email stated in part:

Due to the reorganization which has occurred within the department, I regret to inform you that your position will be eliminated, effective **Wednesday September 7, 2022.**

36. On August 9, 2022, Work Connections and Human Resources sent an email confirming Dr. Pryor's disability leave would be granted under the FMLA, effective August 8, 2022 through September 6, 2022 – despite the fact, as noted above, that Dr. Pryor had already been terminated via an alleged Reduction in Force.

37. On information and belief, Dr. Pryor's duties were assumed by a much younger person who did not have a disability and did not seek leave.

38. Another person in OHEI over the age of 60 also had his position lost to an alleged reduction in force, with his duties also assumed by a much younger person, after he too requested medical accommodations.

## LEGAL ALLEGATIONS

### COUNT I - Defendant UM
*Violation of the Age Discrimination in Employment Act*

39. At all material times, Defendant UM was an employer, covered by and within the meaning of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 6121 et seq. ("ADEA")

40. Plaintiff was a member of a protected class because of her age (73 at the time of termination).

41. Plaintiff was, at all times she was employed by Defendants, qualified for her position as Program Manager for OHEI.

42. Defendant UM terminated Plaintiff because of her age, and/or it was a motivating factor in UM's decision.

43. In addition to the evidence cited above, on information and belief, Defendant Howard stated that she wanted to replace Plaintiff with someone younger, and she wondered aloud when Plaintiff would retire.

44. UM's violation of the ADEA has damaged Plaintiff as alleged herein and below.

## COUNT II - Both Defendants
*Age Discrimination in Violation of the Elliott-Larsen Civil Rights Act*

45. At all relevant times, Plaintiff was an employee and Defendants were employers covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 *et seq*.

46. Plaintiff was a member of a protected class because of her age (73 at the time of termination).

47. Plaintiff was, at all times she was employed by Defendants, qualified for her position as Program Manager for OHEI.

48. Plaintiff's age was a motivating factor in UM's decision to terminate Plaintiff's employment.

49. UM's violation of ELCRA has damaged Plaintiff as alleged herein and below.

## COUNT III - Defendant UM
*Violation of the Americans With Disabilities Act*

50. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the Americans with Disabilities Act, as she had physical and/or mental impairments that substantially limited her in the performance of major life activities, as set forth above, and/or was perceived as having a disability.

51. Defendant UM is an employer within the meaning of the Americans with Disabilities Act.

52. Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and she did perform satisfactorily.

53. Plaintiff made a request for reasonable accommodations as set forth above, specifically regarding a period of leave.

54. The request was approved by UM's clearinghouse for such requests (Work Connections).

55. Defendant Howard was aware of Plaintiff's disability leave.

56. The day after Dr. Pryor went on leave, Defendants published an updated organizational chart with her position, but not her name.

57. That same day, Defendants had a photo shoot for an updated website, and did not include Plaintiff, but did include her eventual successor.

58. On information and belief, when another employer inquired about Dr. Pryor not being included, Defendant Howard said it was not a big deal, and there was nothing to worry about.

59. Plaintiff's leave request was reasonable and would not have been unduly burdensome.

60. Instead of granting Plaintiff's accommodation in the form of her leave request, Defendants terminated her employment.

61. Defendant failed to accommodate Plaintiff in violation of the ADA, and otherwise subjected Plaintiff to an adverse employment action by terminating her employment.

62. As a result, Plaintiff was damaged as alleged herein and below.

### COUNT IV - Defendant UM
*Violation of Section 504 of the Rehabilitation Act*

63. At all relevant times, Plaintiff had a disability and/or was perceived to have a disability within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

64. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

65. Defendant's decision to discharge Plaintiff was motivated in substantial part by Plaintiff's disability, and/or it was a motivating factor in UM's decision.

66. As a result, Plaintiff was damaged as alleged herein and below.

### COUNT V – Both Defendants
*Michigan's Persons With Disabilities Civil Rights Act*

67. At all times relevant, Plaintiff was an employee under the Michigan Persons with Disability Civil Rights Act, M.C.L.A 37.1101, et seq. [PWDCRA].

11

68. Defendant UM was an employer under the PWDCRA, and defendant Howard an agent of such employer.

69. At all times relevant, Plaintiff had a disability within the meaning the PWDCRA and/or was a person who was perceived as having a disability.

70. Plaintiff was able to perform her job with or without reasonable accommodations, and did perform satisfactorily.

71. Plaintiff's disability was unrelated to her ability to perform the duties of her job.

72. Defendant discriminated against Plaintiff on the basis of her disability, ultimately terminating her.

73. As a result, Plaintiff was damaged as alleged herein and below.

### COUNT VI - Defendant UM
*Family Medical Leave Act Interference*

74. Defendant UM was an employer under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

75. Plaintiff was an eligible employee under the FMLA, in that she had a serious health condition and was otherwise entitled to take FMLA leave.

76. Plaintiff made an appropriate request for FMLA leave, which was granted followed up by making a request for leave under the FMLA as described above, which was granted effective August 8, 2022.

77. Defendant interfered with Plaintiff's right to unpaid leave by terminating her while her FMLA leave was in process.

78. As a result, Plaintiff was damaged as alleged herein and below.

## COUNT VII - Defendant UM
*Family Medical Leave Act Retaliation*

79. Plaintiff engaged in statutorily protected activity by requesting protected leave as defined by the FMLA.

80. After learning of Plaintiff's protected activity, Defendant terminated her employment in retaliation.

81. Such conduct was a willful violation of the FMLA.

82. As a result, Plaintiff was damaged as alleged herein and below.

## DAMAGES

84. Defendant's actions were done willfully with reckless indifference to Plaintiff's right to be free from illegal discrimination and retaliation.

85. Defendant's actions directly caused and proximately caused Plaintiff the following damages:

a. *economic damages*: including but not limited to past and future lost wages, bonuses, and pay raises; training and promotions; various types of insurance; lost fringe benefits such as reduction-in-force pay, retirement and associated benefits, and consequential damages as may be proven.

b. *non-economic damages*: including but not limited to embarrassment, humiliation, outrage, pain and suffering, harm to reputation, mental and emotional distress; exemplary damages to the extent allowed by law; and punitive damages as may be allowed by law.

## JURY DEMAND

Plaintiff demands a trial by jury.

## RELIEF REQUESTED

*W H E R E F O R E* Plaintiff requests this honorable court grant the following:

a. Actual and consequential damages as may be proven;

b. The greatest possible combination of emotional distress and/or exemplary damages, for Defendant's willful conduct;

c. Punitive damages as allowed by law;

d. Costs, interest, and attorney fees; and

e. Additional relief, including but not limited to declaratory and injunctive relief, that the court deems just and is permitted in law or equity.

        Respectfully submitted,

        Attorneys for Plaintiff
        **ROUMEL LAW**

        *s/Nicholas Roumel*

        Nicholas Roumel
        4101 Thornoaks Dr.
        Ann Arbor MI 48104
        (734) 645-7507
January 23, 2024        *nick@roumel-law.com*